**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted:   September 15, 2022
Final Report:      November 29, 2022

Anthony N. Delcollo, Esq.
Thomas Kramer, Esq.
Offit Kurman PA
222 Delaware Ave., Suite 1105
Wilmington, DE 19801

Andrew L. Cole, Esq.
Cole Schotz PC
500 Delaware Ave., Suite 1410
Wilmington, DE 19801

Re:   *Mackie Banks, in her individual capacity and derivatively on behalf of the Banks Frankford Real Estates Joint Venture Partnership v. Theodore Banks and Southern Comfort, LLC and the Banks Frankford Real Estate Joint Venture Partnership, a Delaware general partnership* C.A. No. 2022-0428-PWG

Dear Counsel:

Pending before me is a dispute about an oral partnership agreement between a mother and a limited liability company managed by her son for the purpose of developing, leasing and selling properties in Frankford, Delaware. The mother filed a complaint alleging a derivative claim against the LLC and her son for breach of fiduciary duties for the withholding of rental income and profits and the failure to account, and claims for unjust enrichment and breach of contract. The son and the LLC have moved to dismiss the complaint, asserting that the claims regarding certain properties are barred by laches, the claims against the son fail to plead facts sufficient to pierce the corporate veil, the unjust enrichment claim is duplicative of the breach

of contract claim, and the breach of contract claim is barred by the statute of frauds. I recommend the Court deny the motion to dismiss, except the son's claim concerning piercing the corporate veil. I find that the mother has not pleaded sufficient facts to pierce the corporate veil and dismiss her claims seeking to hold the son liable for the LLC's actions. This is a final report.

## I.    BACKGROUND

Plaintiff Mackie Banks ("Mackie") and Defendant Southern Comfort, LLC ("LLC"), a limited liability company solely owned by Defendant Ted Banks ("Ted," together with the LLC, "Defendants"), Mackie's son, allegedly entered into an oral general partnership, the Banks Frankford Real Estate Joint Venture Partnership ("JV Partnership"), for the development and leasing of real property in Frankford, Delaware.[1] Mackie deeded a one-half interest in property located at 17 Thatcher Street, Frankford, Delaware ("Thatcher Property") to Ted, as joint tenants with rights of survivorship, with the LLC collecting rents and dividing the rental income equally with Mackie.[2] Mackie alleges that, in 2021, while they were involved in an unrelated family dispute, Ted began to improperly withhold rental payments from her.[3] She also asserts that she transferred ownership of three (3) lots in Frankford, Delaware

---

[1] Docket Item ("D.I.") 6, at 2. I use first names in pursuit of clarity and intend no familiarity or disrespect.

[2] *Id.*, at 2-3.

[3] *Id.*, at 4.

("Clayton Avenue Properties") to Ted on July 15, 2016, for a partial payment of $100,000.00, in return for a payment of $40,000.00 upon the sale of each parcel.[4] And that she invested an additional $63,000.00 towards the preparation and subdivision of the Clayton Avenue Properties.[5] She contends that the LLC and Ted, with another investor, completed construction of a home on one of the Clayton Avenue Properties in 2021 and sold that lot, as well as the other two lots, without accounting to her, as partner in the JV Partnership, for any profit.[6] She alleges that the LLC and Ted exerted complete control over the JV Partnership, excluding her from the management and operation of the business.[7]

Mackie filed a complaint on May 16, 2022, and an amended complaint ("Amended Complaint") on June 20, 2022, alleging that the LLC and Ted breached their fiduciary duties to the JV Partnership under 6 *Del. C.* § 15-404 and asserting demand futility under 6 *Del. C.* § 15-405(f), were unjustly enriched at her expense, and breached the oral partnership agreement.[8] She seeks access to the partnerships' books and records, damages, the imposition of a constructive trust, and attorneys'

---

[4] *Id.*

[5] *Id.*, at 5.

[6] *Id.*

[7] *See id.*, at 2-5, 8.

[8] D.I. 1; D.I. 6. The JV Partnership is named as a nominal defendant in this action "solely in a derivative capacity." D.I. 6, at 5-6.

fees.[9]  On July 5, 2022, Defendants filed a motion to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(6) ("Motion"), and their opening brief on August 8, 2022.[10]  Mackie's answering brief was filed on August 31, 2022, and Defendants' reply brief on September 15, 2022.[11]

## II.  STANDARD OF REVIEW

The standards governing a motion to dismiss for failure to state a claim under Court of Chancery Rule 12(b)(6) are well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iii) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[12]

"[T]he touchstone to survive a motion to dismiss is reasonable conceivability," which is a "minimal" and "plaintiff-friendly" standard.[13]  "Only if the court can say with reasonable certainty that plaintiff could prevail on no state of facts inferable from the

---

[9] D.I. 6, at 13.

[10] D.I. 8; D.I. 11.

[11] D.I. 13, D.I. 14.

[12] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal quotation marks and citations omitted).

[13] *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC* ("*Tygon*"), 2022 WL 34688, at *11 (Del. Ch. Jan. 4, 2022), *reargument granted in part*, 2022 WL 414399 (Del. Ch. Feb. 10, 2022) (internal quotation marks and citations omitted).

pleadings may the court dismiss a complaint at this preliminary stage."[14] "Despite this forgiving standard, the Court need not 'accept conclusory allegations unsupported by specific facts' or 'draw unreasonable inferences in favor of the non-moving party.'"[15] "Because a motion to dismiss under Chancery Rule 12(b)(6) must be decided without the benefit of a factual record, the Court of Chancery may not resolve material factual disputes; instead, the court is required to assume as true the well-pleaded allegations in the complaint."[16]

## III.    ANALYSIS

The Motion contends that any claims regarding the Clayton Avenue Properties are barred by laches, claims against Ted fail to plead facts sufficient to pierce the corporate veil, the unjust enrichment claim is duplicative of the breach of contract claim, and the breach of contract claim is barred by the statute of frauds.[17] I address each contention in turn.

---

[14] *In re USACafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991).

[15] *Tygon*, 2022 WL 34688, at *11 (citations omitted).

[16] *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001).

[17] D.I. 11.

### A. *Claims Regarding the Clayton Avenue Properties are not Barred by Laches.*

Relying on deeds conveying the Clayton Avenue Properties from the LLC to third parties, which they attached as an exhibit to their opening brief,[18] Defendants argue that the LLC sold each of the Clayton Avenue Properties more than three (3) years before Mackie filed her complaint, so any claims pertaining to those properties

---

[18] *Id.*, Ex. 2. Defendants assert that, even though they are extrinsic evidence, the deeds may be considered by the Court because they are integral to Mackie's claim and are not being relied upon to prove the truth of their contents. Or, they contend that the Court can take judicial notice of the deeds. *Id.*, at 6-7. Mackie challenges Defendants' reliance on the deeds, arguing that the deeds are not incorporated by reference in the Amended Complaint or integral to her claims, since she is not disputing the transactions reflected in the deeds and the deeds are being used to prove the truth of their contents. D.I. 13, at 4-6.

"Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss." *Totta v. CCSB Fin. Corp.*, 2021 WL 4892218, at *2 (Del. Ch. Oct. 20, 2021) (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68 (Del. 1995)). "But, the Delaware Supreme Court has recognized three exceptions to this rule by which the Court may consider certain documents extraneous to a complaint 'for carefully limited purposes': (i) 'when the document is integral to a plaintiff's claim and incorporated into the complaint'; (ii) 'when the document is not being relied upon to prove the truth of its contents'; and (iii) when the document, or a portion thereof, is an adjudicative fact subject to judicial notice." *In re Gardner Denver, Inc.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014) (citations omitted).

"A court may take judicial notice of a fact that is 'not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Totta*, 2021 WL 4892218, at *2 (citing D.R.E. 201(b)). "Judicial notice is only proper where 'sufficient notoriety attaches to the fact to make it proper to assume its existence without proof.'" *Fawcett v. State*, 697 A.2d 385, 388 (Del. 1997) (citation omitted). I find that sufficient notoriety attaches to the recorded deeds to take judicial notice of the dates that the Frankford Lots were transferred by the LLC to third parties. *See* D.I. 11, Ex. 2; *Talley v. Horn*, 2022 WL 4963256, at *1, n.2 (Del. Ch. Oct. 4, 2022), *report and recommendation adopted*, (Del. Ch. 2022) ("The Court may take judicial notice of records in the Recorder of Deeds.") (citation omitted); *see also* D.I. 13, at 8 ("the [Clayton Avenue Properties] transactions themselves are not in dispute").

are time-barred.[19]  Mackie refutes their claim, asserting that laches is inapplicable because the dispute does not focus on the transactions but on Ted's actions, as manager of the JV Partnership, regarding the proceeds from those transactions.[20]  She further argues that equitable tolling applies to her claims until events in June 2021 put her on notice that relying on Ted was "no longer advisable."[21]

I consider whether, at the pleadings stage, Mackie's claims concerning the Clayton Avenue Properties are time-barred. "[L]aches defense is often fact-intensive and, therefore, not readily susceptible to adjudication at the pleadings stage."[22]  "Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate."[23]

Laches is an equitable doctrine "rooted in the maxim that equity aids the vigilant, not those who slumber on their rights."[24]  A finding of laches generally

---

[19] D.I. 11, at 6-7.  The Motion does not address Mackie's claims related to the Thatcher Property. *Id.*

[20] D.I. 13, at 8.

[21] *Id.*, at 9.

[22] *Winklevoss Cap. Fund, LLC v. Shaw*, 2019 WL 994534, at *4 (Del. Ch. Mar. 1, 2019).

[23] *Reid v. Spazio*, 970 A.2d 176, 183-84 (Del. 2009); *Winklevoss Cap. Fund, LLC*, 2019 WL 994534, at *1.

[24] *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982); *see also Reid,*, 970 A.2d at 182 (citations omitted); *Kraft v. WisdomTree Inv., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016) (citations omitted).

requires proof of three factors: the claimant's knowledge of the claim, unreasonable delay in bringing the claim, and resulting prejudice to the defendant.[25] "In determining whether an action is barred by laches, the Court of Chancery will normally, but not invariably, apply the period of limitations by analogy as a measure of the period of time in which it is reasonable to file suit."[26]

"The statute of limitations is three years for a claim for breach of fiduciary duty, a claim for breach of contract, and a claim for unjust enrichment."[27] So, "[u]nless timely filing is excused by a recognized tolling doctrine, a plaintiff must file a claim for breach of fiduciary duty [and for breach of contract and unjust enrichment] within three years of the conduct that gives rise to the claim."[28] "Under Delaware law, a plaintiff's cause of action accrues at the moment of the wrongful act – not when the harmful effects of the act are felt – even if the plaintiff [was] unaware of the wrong."[29]

> At this stage, the Court conducts a three-part analysis to determine whether a claim is time-barred. From the pleadings, the Court determines (1) the date of accrual of the cause of action based on the allegations, (2) if the plaintiff has pleaded facts sufficient to create a reasonable inference that the statute of limitations has been tolled, and

---

[25] *See Whittington v. Dragon Grp., LLC*, 991 A.2d 1, 8 (Del. 2009).

[26] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 769 (Del. 2013).

[27] *Garfield on behalf of ODP Corp. v. Allen* ("*Garfield*"), 277 A.3d 296, 318 (Del. Ch. 2022); *see also Fannin v. UMTH Land Dev., L.P.*, 2020 WL 4384230, at *11 (Del. Ch. July 31, 2020), *cert. denied*, 2020 WL 5198356 (Del. Ch. Aug. 28, 2020), and *appeal refused sub nom. Etter v. Fannin*, 238 A.3d 193 (Del. 2020).

[28] *Garfield*, 277 A.3d at 318 (internal quotation marks and citation omitted).

[29] *Id.* (citation omitted).

(3) assuming a tolling exception has been pleaded adequately, when the plaintiff was on inquiry notice of a claim based on the allegations.[30]

I first consider when Mackie's causes of action accrued. "The 'wrongful act' is a general concept that varies depending on the nature of the claim at issue."[31] Mackie alleges that the wrongful act occurred in June 2021, when Ted "began withholding rent proceeds from the [Thatcher Property] and, through that and other contentious behaviors, first alerted [Mackie] to the possibility that her financial interest in the JV Partnership was at risk."[32] Defendants allege the dates the properties were sold are when the breach occurred, and Mackie's knowledge that the properties were sold and the alleged sale proceeds, as evidenced in the Amended Complaint, are red flags that placed her on inquiry notice.[33] Assuming the well-pleaded allegations in the Amended Complaint as true, the partnership agreement provided that Mackie would be paid $40,000.00 "upon the sale of each lot," and that she has not received payments on her other investments.[34] I have taken judicial notice of the deeds transferring the Clayton Avenue Properties to third parties and note that those dates

---

[30] *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *9 (Del. Ch. June 30, 2021).

[31] *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 77 (Del. Ch. 2013) (citations omitted).

[32] D.I. 13, at 8, 12.

[33] D.I. 11, at 7.

[34] D.I. 6, at 4-5. The Amended Complaint does not reference the timing for other payments on Mackie's additional investments, only stating that the partnership agreement was of "indefinite duration." *Id.*, at 12.

are January 12, 2018 and April 5, 2019.[35] The original complaint was filed on May 16, 2022, which is more than three years after those dates. Under the partnership agreement, $40,000.00 was due "upon the sale of each lot." I find that the breach related to the $40,000.00 payment occurred when the properties were sold, but not for other payments related to those transactions due under the Agreement, since the Amended Complaint does not indicate other payments to Mackie were to be made with those occurrences. So, absent tolling or unusual circumstances, Mackie's claim for $40,000.00 upon the sale of each of the Clayton Avenue Properties is barred by laches.

Next, I consider whether the pleaded facts create a reasonable inference that the statute of limitations has been tolled, and I focus on equitable tolling.[36] "The doctrine of equitable tolling stops a statute of limitations from running while a

---

[35] D.I. 11, Ex. 2.

[36] There is no evidence to support tolling on the other two grounds – inherently unknowable injury or fraudulent concealment. "Under the doctrine of inherently unknowable injuries, the statute will not run where it would be practically impossible for a plaintiff to discover the existence of a cause of action." *In re Tyson Foods, Inc.* ("*Tyson*"), 919 A.2d 563, 584 (Del. Ch. 2007); *see also Barbosa v. Bob's Canine Acad., Inc.*, 2017 WL 2492042, at *6 (Del. Ch. May 19, 2017). Mackie has not shown that she was "'blamelessly ignorant' of both the wrongful act and the resulting harm." *Tyson*, 919 A.2d at 585. Nor is there evidence of the tolling exception of fraudulent concealment, which occurs "where an affirmative act of concealment or a misrepresentation was used to put the plaintiff off the trail of inquiry." *Silverberg v. Padda*, 2019 WL 4566909, at *10 (Del. Ch. Sept. 19, 2019), *reargument denied,* 2019 WL 5295141 (Del. Ch. Oct. 18, 2019) (internal quotation marks and citations omitted); *see also Tyson*, 919 A.2d at 585.

plaintiff has 'reasonably relied upon the competence and good faith of a fiduciary.'"[37]

"The statute of limitations resumes running, however, after the injured party is put on inquiry notice of the claim," or when the plaintiff "knew or had reason to know of the facts constituting the wrong."[38] Inquiry notice occurs when "persons of ordinary intelligence and prudence . . . have facts sufficient to put them on inquiry which, *if pursued,* would lead to the discovery of the injury."[39] "Suspicious facts, or red flags, require a plaintiff to diligently investigate and to file within the limitations period as measured from that time."[40] "It is a plaintiff's burden to plead facts to demonstrate that the statute of limitations was, in fact, tolled."[41]

Here, assuming the well-pleaded facts in the Amended Complaint are true, the LLC, as managing partner of the JV Partnership, and Ted, as sole and managing member of the LLC, exerted complete control over the JV Partnership's operations

---

[37] *Fannin v. UMTH Land Dev., L.P.*, 2020 WL 4384230, at *13 (Del. Ch. July 31, 2020), *cert. denied*, 2020 WL 5198356 (Del. Ch. Aug. 28, 2020), and *appeal refused sub nom. Etter v. Fannin*, 238 A.3d 193 (Del. 2020) (citing *Tyson*, 919 A.2d at 585).

[38] *Id.* (citations omitted).

[39] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *7 (Del. Ch. July 17, 1998), *aff'd,* 725 A.2d 441 (Del. 1999).

[40] *In re Swisher Hygiene, Inc.,* 2020 WL 3125415, at *3 (Del. Ch. June 12, 2020), *reargument denied,* 2020 WL 5268067 (Del. Ch. Sept. 4, 2020) (internal quotation marks and citations omitted).

[41] *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *19 (Del. Ch. June 29, 2005); *see also In re Primedia, Inc. S'holders Litig.*, 2013 WL 6797114, at *12 (Del. Ch. Dec. 20, 2013).

and assets.[42]   The LLC owed fiduciary duties of loyalty and care to the partnership

and to Mackie, another partner, under 6 *Del. C.* § 15-404.[43]   And, Ted owed fiduciary

duties of care and loyalty to the LLC,[44] and the duty of loyalty to the JV Partnership

since he, as the LLC's managing member, controlled the JV Partnership's property.[45]

Mackie reasonably relied on the LLC and Ted in their fiduciary capacities.  Mackie's

claims against the LLC and Ted focus on their failure to account for and distribute the

profits from the sale of the Clayton Avenue Properties to the JV Partnership and

Mackie.[46]   I find a reasonably conceivable basis for equitable tolling of Mackie's

claims against Defendants.

---

[42] *See supra* note 7 and accompanying text.

[43] *See* 6 *Del. C.* § 15-404.

[44] *See Auriga Cap. Corp. v. Gatz Properties*, 40 A.3d 839, 852 (Del. Ch.), *aff'd,* 59 A.3d 1206 (Del. 2012) ("The [LLC] statute incorporates equitable principles [which] …  view the manager of an LLC as a fiduciary and subject the manager as a default principle to the core fiduciary duties of loyalty and care [unless] … [those duties have] been supplanted by contract").  Here, based on the record before me, there is no evidence that the default duties of loyalty and care for Ted, the LLC's sole manager, do not apply.

[45] *See generally Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *14, n. 96 (Del. Ch. June 30, 2021) ("*In re USACafes, L.P. Litigation* … held that the duty of loyalty may extend to the individuals and entities that control a managing entity if such persons exercise control over the entity's property"); *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 671-72 (Del. Ch. 2012) ("*USACafes* has not been extended beyond duty of loyalty claims"); *In re USACafes, LP Litig.*, 600 A.2d 43, 48 (Del. Ch. 1991) (discussing that "the principle of fiduciary duty, stated most generally, [is] that one who controls property of another may not, without implied or express agreement, intentionally use that property in a way that benefits the holder of the control to the detriment of the property or its beneficial owner").

[46] D.I. 6, at 8.

Equitable tolling, however, ends and the limitations period begins to run, at the time Mackie had inquiry notice of the alleged claims. Assuming all well-pleaded facts in the Amended Complaint are true, the suspicious facts – or red flags – occurred no later than June 2021 when Ted began withholding rent proceeds following an unrelated family dispute.[47] Based on the Amended Complaint, tolling ended and the limitations period began to run no later than June 2021, so Mackie filed this action well within the three-year limitations period. Accordingly, I find Mackie's claims for breach of fiduciary duty and contract, unjust enrichment and constructive trust regarding the Clayton Avenue Properties are timely. However, recognizing that a laches determination is "dependent largely upon the particular circumstances [of a case]"[48] and that the factual record in this matter remains to be developed, this decision is without prejudice.

B. *Claims to Hold Ted Liable for the LLC's Actions Are Dismissed for the Failure to Pierce the Corporate Veil.*

Defendants argue that the Amended Complaint fails to plead sufficient facts justifying the piercing of the corporate veil to impose personal liability against Ted for a breach of fiduciary duty or contract, or unjust enrichment by the LLC.[49] Mackie responds that she has pleaded that Ted is the sole member of the LLC and, as such,

---

[47] *Id.* at 4.

[48] *Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, 9 (Del. 2009).

[49] D.I. 11, at 8-9.

Ted completely dominates and controls the LLC and, alternatively, he is liable in his individual capacity.[50]  The issue is whether Mackie has sufficiently pleaded facts to pierce the corporate veil so that Ted can be held liable for the LLC's actions.

 "Persuading a Delaware court to disregard the corporate entity is a difficult task."[51]

> Delaware public policy disfavors disregarding the separate legal existence of business entities.  Although a court considers several factors when determining whether to pierce the corporate veil, courts have often articulated the elements of a veil piercing as requiring 'an overall element of injustice or unfairness.'[52]

"The degree of control required to pierce the veil is exclusive domination and control ... to the point that [the entity] no longer has legal or independent significance of its own. … Piercing the corporate veil under the alter ego theory requires showing that the corporation is a sham and exists for no other purpose than as a vehicle for fraud."[53] "Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity."[54]

---

[50] D.I. 13, at 10.

[51]  *PR Acquisitions, LLC v. Midland Funding LLC*, 2018 WL 2041521, at *15 (Del. Ch. Apr. 30, 2018) (citations omitted).

[52] *Paul Elton, LLC v. Rommel Delaware, LLC*, 2020 WL 2203708, at *14 (Del. Ch. May 7, 2020) (citations omitted).

[53] *PR Acquisitions, LLC*, 2018 WL 2041521, at *15 (cleaned up and citations omitted).

[54] *eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *27 (Del. Ch. Sept. 30, 2013) (citations omitted).

I find that Mackie has not pleaded sufficient facts to pierce the corporate veil of the LLC. The well-pleaded facts depict Ted's position as sole member of the LLC and wrongful acts by the LLC and Ted – the failure to account or distribute profits to the JV Partnership – but those acts are not "tied to the manipulation of the corporate form in order to make veil-piercing justifiable on grounds of equity."[55] Accordingly, I dismiss the claims seeking to hold Ted liable for any judgment against the LLC.[56] However, claims against Ted individually for breach of fiduciary duty,[57] unjust enrichment,[58] and breach of contract,[59] survive the motion to dismiss.

*C. Mackie's Unjust Enrichment Claim Survives the Motion to Dismiss.*

Defendants contend that, since Mackie claims a breach of contract of the partnership agreement, the unjust enrichment claim is duplicable of the breach of contract claim and should be dismissed.[60] Mackie responds that she is arguing the

---

[55] *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at \*4 (Del. Ch. Oct. 30, 2015).

[56] Defendants rely on extrinsic evidence, the HUD-1 Settlement Statement ("Settlement Statement") related to a loan obtained by the LLC as the borrower/buyer, to confirm that Mackie "conveyed the Clayton Avenue Properties to [the LLC], not to [Ted]." D.I. 11, at 9, Ex. 1. The Settlement Statement showed Mackie Portela, LLC, Mackie's alleged limited liability company, as the seller. *Id.* Because Defendants have not shown that the Settlement Statement is integral to Mackie's claim and incorporated into the Amended Complaint, or that it is not being relied upon to prove the truth of its contents, I do not consider it. *See supra* note 18.

[57] *See supra* note 45 and accompanying text.

[58] *See infra* note 64 and accompanying text.

[59] *See infra* § III(D).

[60] D.I. 11, at 9-11.

unjust enrichment claim as an alternative if the Court does not find that an oral

partnership agreement exists between the parties.[61]

> In evaluating unjust enrichment claims, Courts conduct a threshold
> inquiry as to whether a contract already governs the parties' relationship.
> If a contract comprehensively governs the parties' relationship, then it
> alone must provide the measure of the plaintiff's rights and any claim of
> unjust enrichment will be denied.[62]

However, at the pleadings stage, this Court has held that the plaintiff does not

necessarily have to choose their case theory,[63] and has allowed an unjust enrichment

claim to proceed in the alternative to a plaintiff's "claim for breach of the

alleged oral agreement."[64]  Here, at this stage, the breach of contract claim is based

on an oral partnership agreement that has not been proven, and Mackie alleges facts

that, if proven, show the elements of unjust enrichment.  And Ted and the LLC could

be determined to "be liable for unjust enrichment under circumstances when [they]

---

[61] D.I. 13, at 11.

[62] *Agspring Holdco, LLC v. NGP X US Holdings, LP*, 2020 WL 4355555, at \*23 (Del. Ch. July 30, 2020) (citations omitted).

[63] *Garfield*, 277 A.3d 296, 360-62 (Del. Ch. 2022) (the Court denied the motion to dismiss, finding that the plaintiff, who had "alleged facts that support a claim for breach of contract, claims for breach of fiduciary duty, and a claim for unjust enrichment," did not have to choose a theory of the case at the pleading stage).

[64] *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at \*14 (Del. Ch. Mar. 5, 2021).

would not also be liable for a breach of fiduciary duty."[65]  Therefore, I decline to

dismiss the unjust enrichment claim at this stage.

*D. Mackie's Breach of Contract Claim is not Barred by the Statute of Frauds.*

Defendants allege that Mackie's breach of contract claim is barred by the

Statute of Frauds because her claim arises from the oral partnership agreement, which

relates to, and "govern[s] [the LLC's] sale of the Clayton Avenue Properties."[66]

Mackie argues that the Statute of Frauds is inapplicable to the partnership agreement

at issue under 6 *Del. C.* § 15-101(14).[67]

"Delaware's Statute of Frauds, 6 *Del. C.* § 2714, provides that contracts for the

sale of real estate, in order to be enforceable, must be reduced to writing.  Its purpose

is to protect against fraud in land transactions."[68]  The Statute of Frauds "prohibits

enforcement of any agreement 'upon any contract or sale of lands, tenements, or

hereditaments, or any interest in or concerning them, … unless the agreement is in

writing signed by the party to be charged."[69]  However, there are "long recognized

---

[65] *Fannin v. UMTH Land Dev., L.P.*, 2020 WL 4384230, at *27 (Del. Ch. July 31, 2020), *cert. denied*, 2020 WL 5198356 (Del. Ch. Aug. 28, 2020), and *appeal refused sub nom. Etter v. Fannin*, 238 A.3d 193 (Del. 2020).

[66] D.I. 11, at 11; D.I. 14, at 5.

[67] D.I. 13, at 12.

[68] *Sargent v. Schneller*, 2005 WL 1863382, at *4 (Del. Ch. Aug. 2, 2005) (citations omitted).

[69] *CSH Theatres, LLC v. Nederlander of San Francisco Assocs.*, 2015 WL 1839684, at *17 (Del. Ch. Apr. 21, 2015), *aff'd sub nom. In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39 (Del. 2019) (citing 6 *Del. C.* § 2714(a)).

equitable exceptions to the application of the statute of frauds that can form the basis for a claim of ownership [in] … real property.  For example, oral contracts for the sale of land have been upheld under the equitable doctrine of part performance."[70]

Section 15-101(14) of title 6 of the Delaware Code defines a partnership agreement as an "agreement, whether written, oral or implied, among the partners concerning the partnership."[71]  It expressly provides that "[a] partnership agreement is not subject to any statute of frauds (including § 2714 of this title)."[72]

Here, the contract in dispute is an oral partnership agreement pertaining to the development and leasing of real property.[73]  Mackie does not challenge the sale of the properties which involve the interest protected by the Statute of Frauds.  Instead, she seeks amounts allegedly owed under a partnership agreement triggered by the sale.  So the Statute of Frauds does not apply.[74]  Therefore, I conclude that Mackie's breach of contract claim is not barred by the Statute of Frauds.

---

[70] *Hionis v. Shipp*, 2005 WL 1490455, at *5 (Del. Ch. June 16, 2005), *aff'd,* 903 A.2d 323 (Del. 2006).  Defendants cite to *Hionis* for the holding that "'agreements for the conveyance of interests in real estate' must be in writing." D.I. 14, at 5.  Although the *Hionis* Court discussed the Statute of Frauds' requirement that "agreements for the conveyance of interests in real estate … be formalized in a written contract," its focus was on exceptions to the Statute of Frauds and it enforced a parol easement agreement.  *Hionis*, 2005 WL 1490455, at *4, *6.

[71] 6 *Del. C.* § 15-101(14).

[72] *Id.*

[73] *See* D.I. 1.

[74] Even if the agreement would be considered to be a contract for sale of real property, 6 *Del. C.* § 15-101(14), not the Statute of Frauds, would control.  Since the partnership

# IV. CONCLUSION

For the reasons stated above, I recommend the Court deny Defendants Southern Comfort, LLC and Ted Banks' motion to dismiss, except for the pierce the corporate veil claim. I find that Plaintiff Mackie Banks has not pleaded sufficient facts to pierce the corporate veil and dismiss her claims seeking to hold Ted Banks liable for the LLC's actions. Claims against Ted Banks in his individual capacity survive the motion to dismiss. This is a final report and exceptions may be taken under Court of Chancery Rule 144.

Sincerely,

*/s/ Patricia W. Griffin*

Master in Chancery

---

agreement is oral, the Statute of Frauds mandates that a contract for real estate be in writing (unless an exception applies), and 6 *Del. C.* § 15-101(14) states that a partnership agreement is not subject to the Statute of Frauds, the two statutory provisions – 6 *Del. C.* § 15-101(14) and 6 *Del. C.* § 2714 – cannot be reconciled in this instance. "It is an often cited canon of interpretation that in construing statutes, specific provisions shall prevail over general provisions." *Shellburne Civic Ass'n, Inc. v. Brandywine Sch. Dist.*, 2006 WL 4782500, at \*4 (Del. Ch. Sept. 1, 2006); *see also Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 901 (Del. 1994). And the agreement at issue is a partnership agreement, so 6 *Del. C.* § 15-101(14), which specifically applies to partnership agreements, controls. Further, under the Statute of Frauds, since Mackie has already conveyed the properties under the partnership agreement, the part performance exception to the Statute of Frauds may apply.